**STATE, Plaintiff-Appellee, v. ARNOLD et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 1859.  Decided June 4, 1945.

46

Mathias H. Heck, Prosecuting Atty., Dayton. Maurice J. Gilbert, Asst. Prosecuting Atty., Dayton, and Fred M. Kerr, Asst. Prosecuting Atty., Dayton, for plaintiff-appellee.

Herbert D. Mills, Dayton, for defendant-appellant, George Arnold.

Webb R. Clark, Dayton, for defendant-appellant, William James Moon.

## OPINION

By HORNBECK, P. J.

The defendants, together with Robert McKinney were jointly indicted for the offense of murder while in the perpetration of a robbery. Defendants-appellants were jointly tried, upon their own election, to a three judge court and were convicted of and sentenced for murder, as charged, with the recommendation of mercy. From this conviction and sentence both defendants prosecute appeals and each assigns nine identical grounds of error which may be epitomized as follows:

That the court erred in finding that the purported confessions of the defendants were voluntarily made, and in admitting them; that the court erred in finding against the defendants under the evidence offered to support their defenses of alibi and if the alibis were not established, then the court erred in finding the defendants guilty of murder in the first degree because the evidence disclosed that the shooting of Herby was accidental; that the finding and judgment is not sustained by evidence and contrary to law. Errors are also assigned touching the admission and rejection of evidence but the briefs do not discuss these claims except as relate to the confessions.

The essential facts in this case are, that on July 5, 1944, at about 4 o'clock a. m. the Brown Derby, a cafe, was entered by two masked men. John Herby, the manager, and Martha McCoy, the head waitress, were in the place of business, Herby standing back of the bar and Mrs. McCoy seated in front of the bar facing Herby, when two men came into the cafe from the rear. Herby saw the men first and called to Mrs. McCoy to look. She testifies, that when she turned around she saw one of the colored men ten or twelve feet back of her and in the rear of the room, on the top step of a four-step stairs, saw another colored man; that each of the men held a revolver; that their faces below the eyes and the revolvers were covered by handkerchiefs; that the shorter of the men said "We want your money", and putting a gun to her back ordered her to the basement and pushed her partly down the stair steps. Later she heard a shot and saw Herby sinking to his knees standing in the same position as he was at the time he first raised his hands. The man with the revolver then pushed her on down the cellar steps and left. Herby was mortally wounded

and died soon thereafter in a hospital to which he was removed. Mrs. McCoy later identified Moon as the man who had the revolver and who shot Herby.

Defendant, Arnold, signed two confessions and Moon signed one. In these confessions they fully stated the details of the planned robbery, how it was carried out, their part in its commission, stated that Moon did the killing, that McKinney was the second man in the Brown Derby cafe, that Arnold waited outside the cafe in an automobile whose engine was running; that they entered the establishment by means of a crowbar through a door with which Arnold was familiar he having theretofore worked at the cafe. The confessions were secured by the question and answer method and both defendants were interrogated at length to elicit the fact that they had not been threatened or abused and that no promises had been held out to them to induce the confessions.

The first Arnold confession was taken by Miss Charlotte Cross, Official Stenographer, Court of Common Pleas, Clark County, Ohio, in her office in Springfield, on the 20th of October, 1944, and witnessed by Detective C. M. Teter, George Clark and Jerome A. Nevius, Prosecuting Attorney of Clark County. The second confession of Arnold was taken on October 26, 1944, at police headquarters at Dayton. The stenographic notes were taken by Bailey Wright and transcribed by him. The statement was secured by Sgt. C. L. McIlhaney and witnessed by Detective C. M. Teter and Earl A. Fredericks. Both the confessions were admittedly signed by George Arnold.

Moon's confession was taken and transcribed by Bailey Wright at police headquarters at Dayton on November 9, 1944, questions put by Sgt. C. L. McIlhaney and the statement taken in the presence of Robert McKinney, Detective C. M. Teter, G. T. Clark and Lucius Gleaton. The stenographic notes of this confession were signed by Willie Moon.

Arnold objected to the admission of either of the statements which he had signed and Moon objected to the admission of the statement which he had signed, both claiming that the confessions were involuntarily made and brought about by fear induced by beating and abuse practiced on them by the police officers. Arnold testified that in Springfield when a question was put to him he was then beaten and under the fear and pain of these beatings he answered each question. That he likewise was beaten at the time that his Dayton confession was signed. Moon testified that his confession was brought about by violent abuse. Arnold claimed that he had been struck in the jaw and that his teeth had been dislocated and broken. The stenographers who took the confessions and

all police officers who witnessed them testified to the effect that no promises were made to the defendants, that no threats were used against them and that they were not abused in any manner whatever.

The court, at length, received and considered the testimony as to the voluntary character of the confessions and resolved it against the defendants. Certainly this conclusion could not be set aside in this court on review. The defendants were on trial for an offense, the punishment of which may have meant life imprisonment or possibly the death penalty. Every instinct of self-preservation operated upon them to take such steps as would relieve them from a finding of guilt of the offenses with which they were charged and the confessions were admissions of guilt.

To have found that their confessions were involuntary and induced by beatings and abuse would have required the court to conclude that not only the official reporter of the Common Pleas Court of Clark County, the Prosecuting Attorney of that county, but also the police court stenographer of the City of Dayton and all the detectives and police officers who witnessed the confessions were perjurers. Obviously, this was a handicap too great for the defendants to overcome, in the court of first resort and certainly insurmountable in this appellate tribunal.

It is urged at considerable length that at the time that the confessions of Arnold were offered, there was no testimony at all connecting him with the crime and that under the case of **State v Maranda, 94 Oh St 364,** his confessions were improperly admitted.

The court in passing on the motion for new trial stated that it had accepted the respective confessions of the defendants. That each was used only against the defendant who had made it. The second syllabus of State v Maranda;

"It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible.* * * It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged."

If there was evidence tending to establish the corpus delicti then under the quoted syllabus the confession of Arnold was properly admitted. Corpus delicti is defined in the first syllabus of State v Maranda as:

"the body or substance of the crime included in which are usually two elements: 1. The act. 2. The criminal agency of the act."

Here the act of the attempted perpetration of the robbery, the killing and the criminal agency in that killing were all established by the testimony of Mrs. McCoy and, without more, afforded sufficient proof of the corpus delicti to permit the admission of Arnold's confessions. Of course, the proof as to Moon was even stronger because Mrs. McCoy had identified him as the man with the gun. Hugh Parks, by his testimony, also afforded further corroboration of the Arnold confessions when he stated that prior to the attempted robbery he with Arnold, Moon and McKinney had been present when the plan was made to rob the Brown Derby which plan was afterwards carried out as delineated in the respective confessions.

In discussing the doctrine of corpus delicti at page 370 of the opinion in State v Maranda, Judge Wanamaker says that the doctrine is of ancient origin "and was born out of great caution by the courts, * * * Therefore, the rule that there must be some evidence tending to prove the fact that death had actually ensued; which was later followed by an additional requirement of some evidence that that death was brought about by some criminal agency." The circumstances under which extra judicial confession may be accepted are found elucidated in the second syllabus of State v Knapp. In this case the defendant was charged with the murder of his wife. The body had not been recovered and it was claimed that it had been thrown into the Great Miami River. In the instant case there is no such question raised and all that could be urged would be that criminal agency of defendant Arnold is not established. But the second syllabus meets this contention—

"In such case, when the proof of the death is direct and positive, if the circumstances shown are of such force when taken together as to leave no room for doubt that the deceased was murdered, any extra-judicial confession by the prisoner, if otherwise competent, may be admitted in evidence for the purpose of establishing his connection with the crime."

We are satisfied that both confessions were properly admitted at the time when they were accepted by the court.

Defendants offered testimony at length, and of numerous witnesses, to establish an alibi for each of them. If this testi-

mony was true, neither could have been at the scene of the crime when it was committed. Likewise, if this testimony was true all of the confessions were false. The court, the trier of the fact, as it had the right to do, tested the strength of the testimony tending to establish the alibis and found against it.

Finally, it is urged in the briefs, and with much force in the oral presentation of the case, that even though alibi be not established and if the confessions be accepted, there is not established an intentional killing and that it was accidental.

It is true that Moon states in his confession that the revolver which he carried was cocked and that he did not know it until after it was discharged; that the gun was accidently fired.

The course of the bullet outlined by the doctor who performed the autopsy on the body of Herby, a tall man, entered the body at about the level of the hip and took a downward course. It is urged by the State that this refutes the concept of accidental killing, a conclusion which is permissible. There are several significant statements made by Moon in his confession. First, it appears that, according to Moon, McKinney did not play the part in the robbery assigned to him. Instead of coming forward and securing the money, as was his part in the plan, he stayed back in the rear of the room. Moon states that "He" (McKinney) "was supposed to have been there but he wasn't" "He was in there but he was way back" and that "He" (Moon) "looked back to see where McKinney was and begged him to come up". These questions were put and answers made:

"Q. Did they offer any resistance?
A. The lady didn't.
"Q. What happened then?
A. The man (Herby) wheeled on me. I looked back to see where McKinney was and the man wheeled on me and I begged McKinney to come up and the man wheeled on me and I jumped back and the revolver jumped off."

These statements all tend to establish a state of mind of Moon at the time that he did the shooting. He was expecting McKinney to come forward and do his part in the robbery and he had not done so. He says that the lady offered no resistance but that Herby "wheeled" on him. These facts permit the inference that he may have thought that he was getting into a dangerous situation and that he shot by reason of it. Or, it may be that this is a complete fabrication, as

it must be, if the testimony of Mrs. McCoy is to be accepted because she says that Herby at no time changed position after he had held up his hands until he slumped and fell from the bullet wound. The court concluded upon the consideration of all the circumstances that the shooting was intentional and not accidental. There is a presumption that a man intends the natural and probable consequences of his own act. Ordinarily, a revolver, which is in the hand of a person who has it poised ready to shoot does not accidentally discharge. It requires some force applied to the trigger to cause it to discharge. The only circumstance in this case tending to establish unintentional shooting beyond the fact that it is difficult to understand why any man would take the life of an innocent person who offered him no resistance, is the statement of Moon himself that the revolver was accidentally discharged. His testimony had been discredited in so many material particulars that it is not unusual that the court under all the facts elected to disregard and disbelieve his statement of accidental killing.

The writer of this opinion has read all of this record of more than 470 pages and is impressed with the extreme care observed by the court to protect every right of the defendants. As a matter of fact, there are instances where the court restricted the prosecution very rigidly and, possibly, to the extent of denying the admission of testimony to which it was entitled. These defendants had a careful and a fair trial. We find no error assigned well made. They were skillfully represented by their counsel and are fortunate to have received the benefit of a recommendation of mercy.

Judgment affirmed.

GEIGER and MILLER, JJ., concur.